338 So.2d 33 (1976)
Michael John SHOCKEY, Appellant,
v.
The STATE of Florida, Appellee.
No. 75-642.
District Court of Appeal of Florida, Third District.
August 17, 1976.
Rehearing Denied October 6, 1976.
*34 Eugene P. Spellman, Miami, for appellant.
Robert L. Shevin, Atty. Gen. and Margarita Esquiroz, Asst. Atty. Gen., for appellee.
Before BARKDULL, C.J., and PEARSON and HENDRY, JJ.
PER CURIAM.
The appellant, Michael Shockey, was found guilty of murder in the first degree by a jury. He was adjudged guilty and sentenced to life imprisonment.
The victim was Jacob Ludwig, the elderly grandfather of Bruce Kirsch. Shockey and Kirsch were codefendants. Shockey was, pursuant to his motion, tried separately.[1] On this appeal, he has presented three points. The first urges that the evidence of his participation in the killing was insufficient to establish that he was guilty of premeditated murder. The second urges that we should reverse upon a holding of fundamental error because the court failed to instruct the jury on the distinction between principals in the first degree, principals in the second degree and accessories after the fact. The third point claims error upon the denial of his motion for a new trial based upon a claim of newly-available evidence.
The defendant, Michael Shockey, along with Bruce Kirsch, Jacob Ludwig and Kirsch's mother, all lived together in the same house. The victim, Ludwig, said that on September 16, 1974, he would be leaving by train for Philadelphia and asked the defendant whether he would drive him to the station in return for a fee. Two days after the defendant was supposed to have dropped Ludwig off at the train station, the deceased's body was discovered beside a trash pile covered by a couch. The area in which the body was found was described as semi-rural and not heavily traveled. The defendant first told investigating officers that he had dropped the deceased off at the *35 train station. Thereafter, the defendant, having been warned of his rights, made a statement to the officers which was reduced to writing and was read at the trial. In this statement, he stated that he had attempted to take a short cut to beat the traffic and that, finding the road he took blocked, he stopped the car. The defendant said at that point that Kirsch put his arm around his grandfather's neck, started choking the victim and told the defendant to kill the motor. The defendant said he did as Kirsch told him and turned the motor and the lights off because he was afraid of Kirsch. Kirsch then got the victim out of the car and stabbed him with a knife and beat him with a billy club. Kirsch next got the deceased's wallet and also took his watch and checks. These items were thrown away or destroyed. The defendant admitted that he took a couch that was nearby and placed it over the victim. He and Kirsch then disposed of the remaining items by throwing them in a nearby canal.
The appellant urges that while the written statement was clearly sufficient to show that the defendant was guilty of being an accessory after the fact to the murder, it was, together with the other evidence, sufficient to convict the appellant of only that particular crime. The State points to additional evidence which came out at the trial. An investigating officer testified that the defendant, upon being told that there were some discrepancies in his story, admitted, "Well, okay. I knew a couple of days before that he was planning to kill him." The billy club and the knife were found where the defendant said he had concealed them. In addition, the defendant orally admitted that he knew that Kirsch was hiding in the back seat of the vehicle when he left the house.
A person who is charged with the commission of a crime may be convicted upon proof that he aided and abetted in the commission of the crime. See Fla. Stat. § 776.011; State v. Dent, Fla. 1975, 322 So.2d 543; and McClamrock v. State, Fla. App. 1975, 327 So.2d 780.
Before an accused may be convicted as an aider and abettor of a crime, his intent to participate in the crime must be proved. While this intent may be proved in many ways, it cannot be based entirely upon circumstances unless those circumstances exclude the reasonable doubt engendered by appellant's explanation of his presence at the time and place of the crime. See Douglas v. State, Fla.App. 1968, 214 So.2d 653; and cf. Jones v. State, Fla.App. 1966, 192 So.2d 285.
The evidence before this jury showed that the defendant arranged to take the victim in defendant's car, knowing that his friend, Kirsch, was hiding in the car. Defendant knew that Kirsch was planning to kill the victim and he went along with what Kirsch was planning to do. Defendant drove to a secluded area, shut off the motor of the car and turned off the lights on the order of his friend, aided in the disposal of the body and the weapons, and told a false story to the police in an attempt to conceal the crime. We hold that the evidence was sufficient to show defendant's intent to participate in the crime and to exclude any reasonable doubt that he did not intend to participate in the crime.
In State v. Dixon, Fla. 1973, 283 So.2d 1, the Supreme Court considered the constitutionality of the method and means of determining the penalty to be imposed in capital cases pursuant to Fla. Stat. §§ 775.082 and 921.141. In discussing Fla. Stat. § 776.011,[2] the court said:
* * * * * *
"The obvious intention of the Legislature in making this change is to resurrect the distinction between principals in the *36 first or second degree on the one hand and accessories before the fact on the other, in determining whether a party to a violent felony resulting in murder is chargeable with murder in the first degree or murder in the second degree. As to the distinction in any particular case, we need but refer to the rich heritage of case law on the distinctions between principals in the first or second degree and accessories before the fact."
* * * * * *
Appellant urges that although he did not object to the instruction of the court upon the aider and abettor statute[3] and requested no additional instruction on the subject, it was fundamental error to give the instruction. It is argued that it was absolutely necessary for the court, in its instruction, to make clear the distinction between principals in the first degree and second degree and accessories before the fact. We do not find fundamental error. The defendant was on trial for murder in the first degree. The evidence proved him guilty as a participant in the crime. The instruction given was entirely proper as a statement of the law which was and remains in full force and effect in Florida. The fact that the court did not instruct upon the law relating to principals in the first and second degree and accessories before the fact did not deprive the defendant of a fair trial. Cf. Damico v. State, 153 Fla. 850, 16 So.2d 43 (1943); and see Leake v. Watkins, 73 Fla. 596, 74 So. 652 (1917).
In addition, the objection made on this appeal, but not at trial, to the effect that the court failed to read that portion of Fla. Stat. § 782.04 pertaining to second degree murder, which relates to the killing of a human being "... when committed in the perpetration of, or in the attempt to perpetrate, any [of the named felonies] ...," does not show error. There was no evidence in this case of any felony except premeditated murder. It is clear that the omitted portion in no way affected the trial of the defendant upon the issues presented. Therefore, it was not fundamental error. Cf. State v. Wilson, Fla. 1973, 276 So.2d 45; DeLaine v. State, Fla. 1972, 262 So.2d 655; and Roker v. State, Fla.App. 1973, 284 So.2d 454.
Appellant's last point claims that the trial court erred in denying his supplemental motion for a new trial. The motion, in pertinent part, was:
* * * * * *
"4. That it has come to the attention of counsel for the defendant that subsequent to the trial and conviction of MICHAEL JOHN SHOCKEY, a psychiatric examination consisting of regressive hypnosis analysis was conducted upon the codefendant, BRUCE MICHAEL KIRSCH, by Dr. Charles B. Mutter.
"5. That while counsel for the defendant SHOCKEY have not seen a copy of Dr. Mutter's written report nor have they been able to listen to the tape of the examination, it is counsel's understanding that the facts elicited from BRUCE MICHAEL KIRSCH would completely absolve MICHALE JOHN SHOCKEY from any criminal liability in this cause, said facts being consistent with the position taken on behalf of MICHAEL JOHN SHOCKEY during his trial.
"6. That the defendant, BRUCE MICHAEL KIRSCH is presently scheduled for trial in this same cause (the defendants having been severed) on May 19, 1975, and as a result thereof, counsel for KIRSCH (Assistant Public Defender *37 Mike Tarkoff) has refused to permit counsel for SHOCKEY to submit a copy of Dr. Mutter's report with this motion or to waive the physician-patient privilege in order that Dr. Mutter might testify before this Court concerning his examination."
* * * * * *
Since the filing of this appeal, the trial court has, by its order, directed that Dr. Mutter's testimony be made a part of this transcript of record. We have read the testimony and find that in all important particulars, it corroborates defendant's written statement in this cause. It contains no material fact which was not presented to the jury in this case.[4] The trial court did not err in denying the supplemental motion for a new trial because the tendered evidence was not admissible. See Rodriguez v. State, Fla.App. 1976, 327 So.2d 903. Even if admissible, testimony of Dr. Mutter concerning Bruce Kirsch's statements with regard to his execution of the killing was not such as should reasonably produce, on another trial, an opposite result on the merits. See Howard v. State, 36 Fla. 21, 17 So. 84 (1895); Weeks v. State, Fla.App. 1971, 253 So.2d 459.
Affirmed.
NOTES
[1] Kirsch's trial resulted in his conviction of first degree murder. His appeal resulted in an affirmance by this court. See Kirsch v. State, Fla.App. 1976, 338 So.2d 32.
[2] * * * * *
"Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, is a principal in the first degree and may be charged, convicted and punished as such, whether he is or is not actually or constructively present at the commission of such offense."
* * * * * *
[3] The following instruction was given by the court:

"A person may commit a crime by his own personal act or through another person. Any person who knowingly aids, abets, counsels, hires or otherwise procures the commission of a crime is equally guilty with the one who actually performs the criminal act, whether he is or is not present at the commission of the offense. However, for one person to be guilty of a crime physically committed by another, it is necessary that he have a conscious intent that the criminal act shall be done and that, pursuant to that intent, he do some act or say some word which was intended to and which did incite, cause, encourage, assist or induce another person to actually commit the crime."
[4] Basically, under hypnotic analysis, Bruce Kirsch told the psychiatrist that he had gotten in the defendant's car to go to the train station with the defendant and the victim, his grandfather, only for the purpose of apologizing to his grandfather for difficulties had in the past. The codefendant Kirsch said that he wanted to surprise his grandfather upon arrival at the train station, and at that point apologize to him, and that for this reason, he concealed himself in the back seat of the station wagon, saying that his grandfather would not have allowed him to ride in the car when going to the train station. His statement, however, also related how he choked his grandfather and struck him, explaining that he had gotten angry when his grandfather started cursing, etc.