Timothy Elvin **ECKMAN**, Appellant,

v.

**STATE of Indiana, Appellee.**

**No. 3–178A4.**

Court of Appeals of Indiana,
Third District.

March 12, 1979.

David M. Hamacher, Crown Point, for appellant.

Theo. L. Sendak, Atty. Gen., Victoria R. Van Duren, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

A jury found Timothy Elvin Eckman guilty of two counts of Robbery and he was sentenced to the Indiana Department of Corrections for two concurrent periods of not less than ten (10) nor more than twenty-five (25) years. In his appeal to this Court, Eckman raises the following issues:

(1) Whether the trial court erred when it denied defendant Eckman's motion to suppress and allowed two witnesses to identify him at trial?

(2) Whether the trial court erred when it denied Eckman's motion for a directed verdict on the two counts of Robbery?

(3) Whether the evidence was sufficient to support his conviction?

(4) Whether the trial court erred when it read Final Instruction No. 1 to the jury after the court had granted a directed verdict for Eckman on the subject matter of that instruction?

We affirm.

## I.

### Identification

Eckman maintains that his due process rights were violated when the trial court allowed two complaining witnesses to make in-court identifications of him. Eckman predicates this contention on tandem bases:

(1) He first argues that the circumstances surrounding the out-of-court photographic identifications of him made by the witnesses were unnecessarily suggestive, and (2) He maintains no independent factual basis existed to support the subsequent in-court identifications made by the witnesses. Based on these companion allegations, Eckman argues that the in-court identifications were the product of the unconstitutionally conducted photographic identifications.[1]

An in-court identification by the same witness who has participated in an out-of-court identification conducted in an unnecessarily suggestive manner is permissible if an "independent basis" for the in-court identification is established. *Parker v. State* (1976), 265 Ind. 595, 599, 358 N.E.2d 110, 112; *Swope v. State* (1975), 263 Ind. 148, 157, 325 N.E.2d 193, 197, *cert. denied* 423 U.S. 870, 96 S.Ct. 135, 46 L.Ed.2d 100. If the State shows that an independent basis for the in-court identification exists, assurance is provided that the identification in court is not the product of a pre-trial confrontation "so unnecessarily suggestive and conducive to irreparable mistaken identification that he [defendant] was denied due process of law." *Stovall v. Denno* (1967), 388 U.S. 293, 301, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199. Thus, an in-court identification may be proper in spite of an earlier photographic identification conducted in a suggestive manner. *See, e. g., Emerson v. State* (1972), 259 Ind. 399, 287 N.E.2d 867.

To determine if an independent basis for the in-court identification is present here, we examine the "totality of circumstances" surrounding the opportunity of the complaining witnesses to observe the perpetrator of the crime at the time it occurred. *Swope v. State, supra* at 197. Those circumstances include the length of time the perpetrator was in the presence of the witnesses, the lighting conditions at that time,

the distance of the witnesses from the perpetrator, the capacity of the witnesses for observation, and the opportunity of the witnesses to observe particular characteristics of the perpetrator. *Id.*

The record reveals the following with regard to complaining witnesses Cheryle and Michael Cortezes' opportunity to observe one of the men who robbed them on the night of September 17, 1976. At the time of the occurrence, the Cortezes were about to leave an apartment complex where they had visited friends. It was 11:30 P.M. The Cortezes, who were seated in their automobile, were approached by three or four men. All but one of the men wore masks. The men pointed a shotgun at the Cortezes and ordered them to return to the apartment where the friends of the Cortezes resided. Once inside the apartment, the Cortezes and their friends were ordered to lie face down on the floor during the robbery.

The Cortezes testified that this prone position prevented them from observing the perpetrators inside the apartment. In addition, the complaining witnesses both stated that they were not facing any of the men as they walked from the parking lot to the apartment. The only opportunity to observe the men occurred as the Cortezes were accosted at their automobile.

The record reveals that Cheryle and Michael Cortez differed in their estimation of the time they had to observe the men at their car. Cheryle testified that approximately a minute and a half or two minutes passed before the group started toward the apartment, while Michael estimated that only thirty seconds elapsed during the confrontation at the car. Cheryle testified that a nearby apartment porch light and the automobile dome light provided light by which to observe the men. According to her, the man was not wearing a mask, had

---

1. The complaining witnesses examined a set of twenty photographs together and were allowed to converse with each other about the familiarity of individuals whose photograph was contained therein. This procedure, according to Eckman, resulted in an identification which was the determination of the group of witnesses, rather than independent identifications by each witness. For reasons explained in our opinion, we need not decide whether this procedure was actually unnecessarily suggestive.

long hair, a beard, and did not wear glasses. Michael stated that he became excited at the presence of the gun but maintained his capacity to perceive the events around him. To their knowledge, neither complaining witness had seen the man before.

At trial, defendant Eckman had short hair, no beard, and wore glasses. Despite these distinct physical characteristics distinguishing Eckman from the man who robbed the Cortezes, both complaining witnesses identified Eckman at trial as the perpetrator who did not wear a mask. Subsequent testimony of Police Officer Robert Townsell, who observed Eckman when he was arrested on September 22, 1976, for the robbery, explains this disparity in physical appearances and indicates that an independent basis for the in-court identification did exist here. According to Townsell, when Eckman was arrested he was not wearing glasses and long hair and a beard. The consistency of this testimony with the observations of the complaining witnesses lends credence to the State's claim that the circumstances were sufficient to afford them adequate opportunity to observe and remember the physical characteristics of one of the men who robbed them.

Based on the totality of circumstances presented here, we find that an independent basis for the in-court identification did exist. Regardless of whether the pre-trial photographic identification was conducted in an unnecessarily suggestive manner, the trial court did not err when it allowed the witnesses to identify Eckman at trial. *Parker v. State* (1976), 265 Ind. 595, 599, 358 N.E.2d 110, 112.

## II.

### Directed Verdict

Eckman's contention that the trial court erred when it denied his motion for a directed verdict on the two counts of robbery is based on the assumption that the Cortezes' in-court identification of Eckman was improper. Absent those identifications, there was no evidence to link Eckman to the commission of the offenses charged. We have held that the in-court identifica-

tions were proper; therefore, the basis for Eckman's contention no longer exists. The trial court did not err in denying his motion for a directed verdict. .

## III.

### Sufficiency of the Evidence

Eckman's contention that the evidence was insufficient to support his conviction is also predicated on the erroneous conclusion that the in-court identification was improper. It is well settled that a conviction may be supported by the testimony of a single eyewitness. *Bryant v. State* (1972), 257 Ind. 679, 681, 278 N.E.2d 576, 577. The Cortezes' testimony was sufficient to sustain Eckman's conviction.

## IV.

### Final Instruction

Eckman maintains that the trial court committed reversible error when it read Final Instruction No. 1 to the jury. That instruction consisted of the three count charging information filed against Eckman, which alleged that he participated in the robbery of three persons: Cheryle Markovich Cortez, Michael Cortez and Debbie Jean Thomas. At trial the State presented no evidence that Thomas was robbed, and the trial court accordingly granted Eckman's motion for a directed verdict regarding that count which related to Thomas. Despite the directed verdict, however, the trial court adopted and read the complete charging information as the court's Final Instruction No. 1.

Eckman waived his right to challenge the propriety of Final Instruction No. 1 on appeal. Ind.Rules of Procedure, Criminal Rule 8(B) reads in relevant part:

"After the court has indicated the instructions to be given, each party shall have a reasonable opportunity to examine such instructions and to state his specific objections to each, out of the presence of the jury and before argument, or specific written objections to each instruction may be submitted to the court before

argument. *No error with respect to the giving of instructions shall be available as a cause for new trial or on appeal, except upon the specific objections made as above required."* (Emphasis added.)

Although the propriety of Final Instruction No. 1 was challenged in Eckman's motion to correct errors, no similar objection, either oral or written, appears from the record to have been tendered to the trial court prior to argument as required by CR. 8(B). This failure constitutes a waiver of Eckman's right to challenge the instruction on appeal.

Affirmed.

GARRARD, P. J., and HOFFMAN, J., concur.