COMMONWEALTH vs. A JUVENILE.

Suffolk.  September 10, 1980. — November 4, 1980.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Hypnosis.  Evidence,* Hypnotically aided testimony.  *Practice, Criminal,* Findings by judge.

This court declined to answer reported questions with respect to the admissibility in a juvenile proceeding of identification testimony which was developed as the result of hypnosis and remanded the case where the judge had made no findings of fact concerning the reliability of the identification testimony and the suggestiveness of the procedures that were followed. [729]

Review of authorities with respect to the admissibility of hypnotically aided testimony. [729-732]

Discussion of considerations that may be material in resolving the question of the admissibility of hypnotically aided testimony. [732-735]

COMPLAINTS received and sworn to in the West Roxbury Division of the District Court Department on November 28, 1978, January 31, 1979, and February 6, 1979.

Upon appeal to the appellate session of the Boston Division of the Juvenile Court Department, questions of law were reported to the Appeals Court by *Ireland,* J.  The Supreme Judicial Court, on its own initiative, ordered direct review.

*Louis Goldstein* (*Charles S. Goldstein* with him) for the defendant.

*Frank Mondano,* Assistant District Attorney, for the Commonwealth.

*Thomas Shapiro & Richard Friedman,* amici curiae, submitted a brief.

WILKINS, J.  This case presents in this court for the first time the question of the admissibility of testimony that was developed as the result of hypnosis.

The victim could not identify her attacker with any degree of accuracy. A Boston police detective placed her in a hypnotic state after which she was able to assist in the preparation of a composite picture that, in due course, led to charges against the juvenile. The juvenile appealed to the appellate session of the Boston Juvenile Court from a finding of delinquency in the West Roxbury Division of the District Court Department. The juvenile moved to suppress the victim's identification testimony. The judge, acting pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979), reported certain questions, set forth in the margin,[1] to the Appeals Court.[2] We transferred the case to this court on our own motion.

---

[1] "1. Whether the composite picture assembled by the witness on November 30, 1978, should be suppressed because her memory was enhanced by hypnosis, although she was not in an hypnotic trance when the composite was made (though there may be a question of whether she was subject to post-hypnotic suggestion).

"2. If there is no record of the hypnosis, is this a critical defect or may inferences be drawn about the absence of a record of the process.

"3. If the composite is to be suppressed, should the court admit the testimony concerning the witness' later identifications of the defendant in a photograph and in person? Are these later identifications to be excluded as tainted?

"4. Should the fact that the police officer who administered the composite 'kit' knew the defendant from the past be considered 'unduly suggestive?'

"5. If the composite is to be suppressed, shall the court permit the witness to identify the defendant as her assailant in her testimony before the jury as an independent in-court identification?

"6. What if any standards should be followed by a trial judge in deciding whether to admit evidence which is the product of a witness' hypnotically enhanced recollection?

"7. Should the person who administers hypnosis have any defined training, background or education?"

[2] Rule 34 authorizes the pretrial reporting of questions of law that the trial judge determines are "so important or doubtful as to require the decision of the Appeals Court." In this case a jury had been empanelled but no evidence had been presented to them when, with the consent of the juvenile and his mother, the judge determined that certain questions of law should be reported to the Appeals Court. Although, as the judge acknowledged, it would have been preferable to have made the decision to report those questions before empanelment of the jury, in the cir-

Although the judge made a careful analysis of the case law and of the problem of the use of hypnotically aided testimony,[3] he did not make findings of fact concerning the reliability of the identification testimony or concerning the suggestiveness of the procedures that were followed. In view of the absence of findings on these crucial matters and because the juvenile was to attain the age of eighteen early in October, we entered an order on September 17, 1980, remanding the case to the Boston Juvenile Court.[4] This opinion sets forth a brief review of the treatment of this issue in other jurisdictions and identifies considerations that may be material in resolving the question of the admissibility of hypnotically aided testimony.

It is generally accepted that testimony while under hypnosis and evidence of what a subject said while under hypnosis are inadmissible. See *Emmett* v. *State,* 232 Ga. 110, 115 (1974); *People* v. *Smrekar,* 68 Ill. App. 3d 379, 385 (1979); *People* v. *Hangsleben,* 86 Mich. App. 718, 728-729 (1978); *Greenfield* v. *Commonwealth* 214 Va. 710, 715-716 (1974). But see *People* v. *Modesto,* 59 Cal. 2d 722, 732-733 (1963) (statements under hypnosis may be admissible in support of an expert opinion). In one criminal case, it has been held to be error to fail to disclose to the defendant that a prosecution witness's testimony has been aided by hypnosis. *United States* v. *Miller,* 411 F.2d 825, 831-832 (2d Cir. 1969).

Some courts have simply stated that the fact that a witness was hypnotized goes to the weight of the evidence, thus passing to the jury any question of the suggestiveness of the

---

cumstances, the judge acted "prior to trial" within the meaning of Mass. R. Crim. P. 34, and the report is properly before us.

[3] We use the phrase hypnotically aided testimony to describe testimony that was not available from the hynotized witness before hypnosis and became available from that witness after hypnosis.

[4] The order stated in part: "We think we should not answer the reported questions on the record before this court. Findings of fact on the issues raised by the juvenile's motion to suppress should be made. Opinion or opinions to follow."

process and of the reliability of the witness's posthypnotic testimony. See *Harding* v. *State,* 5 Md. App. 230, 236 (1967), cert. denied, 395 U.S. 949 (1969), which has been regarded as a leading opinion representative of this position. See also *Clark* v. *State,* 379 So. 2d 372, 374-375 (Fla. App. 1979); *Creamer* v. *State,* 232 Ga. 136, 138 (1974); *State* v. *McQueen,* 295 N.C. 96, 119-122 (1978); *State* v. *Jorgensen,* 8 Or. App. 1, 9 (1971); Annot., 92 A.L.R.3d 442, 461-464 (1979).

Similarly, the Court of Appeals for the Ninth Circuit has concluded that, both in criminal and civil cases, hypnotically aided testimony is generally admissible. See, e.g., *United States* v. *Adams,* 581 F.2d 193, 198 (9th Cir.), cert. denied, 439 U.S. 1006 (1978); *Kline* v. *Ford Motor Co.,* 523 F.2d 1067, 1069-1070 (9th Cir. 1975). That court has simply announced, without detailed analysis, that the fact that a witness's memory may have been aided by hypnosis goes to his credibility but not to the admissibility of his testimony. *Kline* v. *Ford Motor Co., supra.* In a criminal case, at least, it suggested that a stenographic record be made, and recommended as helpful an audio or video recording. *United States* v. *Adams, supra* at 199 n.12. That court has not considered the suggestiveness of the hypnotic process, in a general or in a constitutional sense, and has held that the use of such a process did not in itself deny a defendant his constitutional right to cross-examine witnesses and to call witnesses on his own behalf. *Id.* at 199.[5] Indeed, the acceptability of hypnotically aided testimony appears so well established in the Ninth Circuit that it is error for the prosecution in a criminal case to bring out the fact of a witness's hypnosis on direct examination or to present an expert in support of the use of such a procedure, unless and until the defendant challenges it. *United States* v. *Awkard,* 597 F.2d 667, 669-670 (9th Cir.), cert. denied, 444 U.S. 885 (1979).

---

[5] In the *Adams* case, the prosecution impeached a defense witness with his posthypnotic statements. *Id.* at 198.

Other courts have approached the admissibility of hypnotically aided testimony by seeking to determine, according to the test first stated in *Frye* v. *United States*, 293 F. 1013, 1014 (D.C. Cir. 1923), whether the reliability of such testimony has gained general acceptance by experts in the field. This court has applied the *Frye* standard in various circumstances (see *Commonwealth* v. *Lykus*, 367 Mass. 191, 196 [1975], and cases cited), but has also noted that the *Frye* standard has been criticized (*id.* at 203-204). See also *Commonwealth* v. *Vitello*, 376 Mass. 426, 443 n.17, 447 n.20 (1978). The question basically is whether judges (at least initially) or finders of fact should sort out any controversy over the acceptability of the consequences of hypnosis.

Courts that have applied the *Frye* rule to determine the admissibility of hypnotically aided testimony have come to different results. Recently, on a record including the testimony of five experts on hypnosis and memory retrieval, the Minnesota Supreme Court held that, in a criminal proceeding, information adduced following a pretrial hypnotic interview of a particular witness could not be admitted because it did not meet ordinary standards of reliability. *State* v. *Mack*, 292 N.W.2d 764, 772 (Minn. 1980).[6] In *State* v. *LaMountain*, Ariz. , (1980),[a] the Supreme Court of Arizona, without analysis, held that the admission of hypnotically aided testimony was error (but not reversible error) because "the state of the science (or art) has [not] been shown" to be adequate. On the other hand, in another recent opinion, a trial judge in New Jersey concluded that the *Frye* test was met to the extent that hypnotized subjects have "the ability to concentrate on a past event and volunteer previously unrevealed statements concerning the

[6] The court did not reach the defendant's Sixth and Fourteenth Amendment arguments. The State argued that the witness's testimony was "present recollection refreshed" and was admissible subject to certain safeguards. *Id.* at 767. Although the Minnesota court limited its holding to the testimony of the particular witness involved in the case before it, its broad conclusion of a lack of scientific acceptance suggests a principle of more universal application.

[a] 611 P.2d 551, 555 (Ariz. 1980).

event." *State* v. *Hurd*, 173 N.J. Super. 333, 361 (1980).
The court then concluded that such hypnotically aided re-
call should be admitted in evidence only if it meets an ac-
ceptable level of reliability. Applying the principles of
*United States* v. *Wade*, 388 U.S. 218 (1967), and *Neil* v.
*Biggers*, 409 U.S. 188 (1972) (*Hurd, supra* at 362), together
with standards for the conduct of any hypnotic procedure[7]
(*id.* at 363), the judge concluded that the State had failed to
prove either that there was no impermissibly suggestive or
coercive conduct during the hypnotic session or that the
hypnotically aided testimony was reliable under the totality
of the circumstances. *Id.* at 369.

We need not decide now whether the rule of the *Frye* case
appropriately should be applied to test the admissibility of
hypnotically aided testimony. The *Frye* rule deals with the
admissibility of expert testimony based on the application of
scientific principles. Hypnotically aided testimony is dif-
ferent in character, but consideration of the *Frye* rule, or
some modification of it, may nevertheless be appropriate in
such a situation. Cf. *State* v. *Temoney*, 45 Md. App. 569,
577-578 (1980).

The ultimate question is whether hypnotically aided testi-
mony lacks sufficient reliability to make presentation of that
evidence appropriate. The process by which testimony was
obtained may be so suggestive as to destroy its reliability.
Various procedures have been recommended to enhance the
reliability of such testimony.[8] We need not decide now

---

[7] These standards were those advocated by Dr. Martin Orne, one of the
defendant's expert witnesses. See *infra* note 8.

[8] In *State* v. *Hurd*, 173 N.J. Super. 353, 362-363 (1980), the court
adopted the following procedural safeguards derived from the testimony
of Dr. Martin Orne:

> "(1) The hypnotic session should be conducted by a licensed
> psychiatrist or psychologist trained in the use of hypnosis.
> "(2) The qualified professional conducting the hypnotic session
> should be independent of and not responsible to the prosecutor, in-
> vestigator or the defense.
> "(3) Any information given to the hypnotist by law enforcement
> personnel prior to the hypnotic session must be in written form so

what, if any procedures we would require or recommend. It may be that we shall conclude, as a matter of law, that no procedures are adequate.[9] Nor need we now decide whether considerations applicable in passing on the suggestiveness of a pretrial identification procedure are relevant in determining the admissibility of hypnotically aided testimony.[10] Of course, even if, after a voir dire hearing, the

that subsequently the extent of the information the subject received from the hypnotist may be determined.

"(4) Before induction of hypnosis, the hypnotist should obtain from the subject a detailed description of the facts as the subject remembers them, carefully avoiding adding any new elements to the witness' description of the events.

"(5) All contacts between the hypnotist and the subject should be recorded so that a permanent record is available for comparison and study to establish that the witness has not received information or suggestion which might later be reported as having been first described by the subject during hypnosis. Videotape should be employed if possible, but should not be mandatory.

"(6) Only the hypnotist and the subject should be present during any phase of the hypnotic session, including the pre-hypnotic testing and post-hypnotic interview."

In an affidavit filed in another case, Dr. Orne recommends videotaping of the hypnotic session in all cases. He also recommends, in addition to those recommendations adopted by the *Hurd* court, that all interrogations of the witness prior to hypnosis be tape-recorded. See *People* v. *Hughes*, 99 Misc. 2d 863, 869 (N.Y. 1979).

See the recommended procedures in *United States* v. *Adams*, 581 F.2d 193, 199 n.12 (9th Cir.), cert. denied, 439 U.S. 1006 (1978). See also Shafer & Rubio, Hypnosis to Aid the Recall of Witnesses, 26 Int'l J. of Clinical and Experimental Hypnosis 81, 83-84 (1978); Ault, FBI Guidelines for Use of Hypnosis, 27 Int'l J. of Clinical and Experimental Hypnosis 449 (1979); Resolutions of the Society for Clinicial and Experimental Hypnosis and the International Society of Hypnosis, 27 Int'l J. of Clinical and Experimental Hypnosis 452-453 (1979).

[9] A forceful argument has been made that hypnotically enhanced testimony is not and cannot be reliable and must be excluded as a matter of law. Diamond, Inherent Problems in the Use of Pretrial Hypnosis on a Prospective Witness, 68 Calif. L. Rev. 313 (1980).

[10] The two situations are not identical. A suggestive pretrial identification may or may not bar the admission of testimony based on observations made at the time of the crime. See *Manson* v. *Brathwaite*, 432 U.S. 98 (1977); *Neil* v. *Biggers*, 409 U.S. 188 (1972). On the other hand, testimony based solely on "memory" revived by hypnosis has no independ-

judge should determine to admit the evidence, the issue of the reliability of the testimony could be raised before the jury.

In order to exercise our judgment reasonably, we need findings concerning the reliability of hypnotically aided testimony generally and the reliability of that testimony in light of the procedures followed in the particular case. Obviously, procedures that were or may have been suggestive present a less satisfactory case for admission of such testimony than procedures that were carefully designed, as far as possible, to eliminate any suggestiveness. It was the absence of any findings on these points that prompted us to issue the order remanding the case to the trial court. We shall have to deal with these considerations, and perhaps others, if and when another case comes before us on a fuller record.[11] We add that because there is an inherent possibility of suggestiveness in such a situation and because the circumstances surrounding the hypnosis are within the knowledge of the Commonwealth, the burden is on the Commonwealth to establish that the particular hypnotically aided testimony has sufficient reliability to justify its introduction in evi-

---

ent support from the witness.

Several courts have approached the admissibility of hypnotically aided testimony by applying the principles developed in *Simmons* v. *United States*, 390 U.S. 377, 384 (1968), *Stovall* v. *Denno*, 388 U.S. 293, 302 (1967), and *United States* v. *Wade*, 388 U.S. 218, 241 (1967). In addition to *State* v. *Hurd*, 173 N.J. Super. 333 (1980), discussed earlier in the text, see *United States* v. *Narciso*, 446 F. Supp. 252, 279-282 (E.D. Mich. 1977); *People* v. *Smrekar*, 68 Ill. App. 3d 379, 385-388 (1979); *People* v. *Hughes*, 99 Misc. 2d 863 (N.Y. Onondaga County Ct. 1979). See also *Merrifield* v. *State*,         Ind. ·    ,    -    (1980) (400 N.E.2d 146, 149-150 [Ind. 1980]) (pre-hypnotic identification presented an independent basis for the victim's in-court identification).

[11] A witness's degree of confidence in his testimony and his willingness to fill in missing elements may be affected by the hypnotic process. See *State* v. *Mack*, 292 N.W.2d 764, 768-769 (Minn. 1980). The irreparable alteration of memory which may thus occur arguably presents the constitutional question whether the use of hypnosis improperly denies the defendant the right to confront witnesses against him. See *Mack, supra;* but see *People* v. *Smrekar*, 68 Ill. App. 3d 379, 388 (1979). Such alteration might also be characterized as the destruction of exculpatory evidence. Moreover, the unavailability of a record of the circumstances dur-

dence. See *Commonwealth* v. *Botelho*, 369 Mass. 860, 867-868 (1976); *State* v. *Hurd*, 173 N.J. Super. 333, 364-365 (1980).

---

ing and surrounding the hypnotic procedure might be termed a failure to disclose exculpatory evidence or a denial of the effective assistance of counsel.