David J. STRONG, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1179S312.

Supreme Court of Indiana.

June 3, 1982.

Rehearing Denied July 30, 1982.

Arnold Paul Baratz, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Cindy A. Ellis, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted after trial by jury of murder, Ind.Code § 35–42–1–1 (Burns 1979), and attempted robbery, Ind.Code § 35–41–5–1, § 35–42–5–1 (Burns 1979). The trial court sentenced him to consecutive terms of forty (40) years imprisonment on the murder charge and thirty (30) years imprisonment on the attempted robbery charge. For the reasons stated below, we reverse the conviction.

At approximately 11:30 p. m. on September 1, 1978, two men entered an automobile service station in Marion County and announced a "stick-up." The attendant was placing money from his last sale into the cash register. He responded "No," and one of the intruders shot him. He died shortly thereafter. Assisting the attendant that night was his commonlaw wife, Norma Miller. She was three (3) to four (4) feet from the defendant when the incident occurred, and she gave a general description of the robbers to the police.

The following day Miller examined two books of police identification photographs, generally called "mug books." She selected the defendant's photograph from one such book, as a picture of the person who had shot her husband.

On September 8, 1978 Miller was hypnotized by Sergeant Vandergriff of the police department. At trial, Vandergriff related

his experience and training in the area of hypnosis. During the hypnotic session the detective who was investigating the homicide was also present.

The purpose of the hypnosis was to enable Miller to review the incident in her mind and to assist an artist to compose a drawing of the robbers. The session was tape recorded and transcribed. A composite was drawn from Miller's description of the defendant given while in a hypnotic trance and was admitted into evidence, over the defendant's objection and pre-trial suppression motion. Miller was also allowed to identify the defendant in court, over the defendant's objection and pre-trial suppression motion.

On September 9, 1978 Miller was shown an array of ten "mug shots." She chose a photograph of the defendant as depicting the murderer. The array was entered into evidence over the defendant's objection.

On October 3, 1978 Miller viewed a lineup in which the defendant participated. On that occasion she selected a participant other than the defendant. At trial, she testified that on that occasion she deliberately chose the wrong person, because she was afraid that the defendant could see her.

■ The defendant contends that neither Miller's in-court identification testimony nor the composite drawing should have been admitted into evidence, because they were the products of an impermissibly suggestive hypnotic session.

We turn first to the composite drawing. Although some jurisdictions have held to the contrary,[1] the better reasoned cases hold that evidence derived from a witness while he is in a hypnotic trance is inherently unreliable and should, therefore be excluded as having no probative value. *State*

*v. Mena*, (1981) 128 Ariz. 226, 231–32, 624 P.2d 1274, 1279–80; *State v. LaMountain*, (1980) 125 Ariz. 547, 551, 611 P.2d 551, 555; *People v. Blair*, (1979) 25 Cal.3d 640, 665, 602 P.2d 738, 754, 159 Cal.Rptr. 818, 834; *Shockey v. State*, (1976) Fla.App., 338 So.2d 33, 37, cert. denied, (1977) Fla., 345 So.2d 427; *Rodriguez v. State*, (1976) Fla.App., 327 So.2d 903, cert. denied, (1976) Fla., 336 So.2d 1184; *Collier v. State*, (1979) 244 Ga. 553, 558, 261 S.E.2d 364, 370, cert. denied, (1980) 445 U.S. 946, 100 S.Ct. 1346, 63 L.Ed.2d 781; *Creamer v. State*, (1974) 232 Ga. 136, 138, 205 S.E.2d 240, 241; *People v. Kester*, (1979) 78 Ill.App.3d 902, 910, 34 Ill.Dec. 216, 222, 397 N.E.2d 888, 894; *Commonwealth v. a Juvenile*, (1980) 381 Mass. 727, 412 N.E.2d 339, 341; *People v. Gonzales*, (1981) 108 Mich.App. 145, 310 N.W.2d 306; *People v. Tait*, (1980) 99 Mich.App. 19, 297 N.W.2d 853, 857; *State v. Koehler*, (1981) Minn., 312 N.W.2d 108, 110; *State v. Mack*, (1980) Minn., 292 N.W.2d 764, 772; *State v. Pierce*, (1974) 263 S.C. 23, 30, 207 S.E.2d 414, 418; *Greenfield v. Commonwealth*, (1974) 214 Va. 710, 715–16, 204 S.E.2d 414, 418–19.

Assuming, *arguendo*, that hypnosis can effect recall not otherwise attainable, the product is not susceptible of cross examination and should be excluded for this reason alone. The record shows that the composite drawing was such a product. It was, therefore, error to admit it into evidence.

■ Miller's in-court identification presents a different problem. Assuming, *arguendo*, that the hypnotic session was impermissibly suggestive, we must, nevertheless, determine whether or not the State demonstrated, through clear and convincing evidence, that the in-court identification of the defendant has a factual basis indepen-

---

1. Some courts recognize that placing a witness under hypnosis prior to trial does not by itself render the witness' subsequent in-court testimony tainted or inadmissible. *People v. Diggs*, (1980) 112 Cal.App.3d 522, 169 Cal.Rptr. 386, 391; *Clark v. State*, (1979) Fla.App., 379 So.2d 372, 374–75; *Creamer v. State, infra; People v. Smrekar*, (1979) 68 Ill.App.3d 379, 388, 24 Ill. Dec. 707, 714, 385 N.E.2d 848, 855; *Harding v. State*, (1968) 5 Md.App. 230, 246 A.2d 302, cert.

denied, (1969) 252 Md. 731, cert. denied, (1969) 395 U.S. 949, 89 S.Ct. 2030, 23 L.Ed.2d 468 (qualified in *Polk v. State*, (1981) 48 Md.App. 382, 427 A.2d 1041); *State v. Hurd*, (1981) 86 N.J. 525, 432 A.2d 86; *State v. McQueen*, (1978) 295 N.C. 96, 119–20, 244 S.E.2d 414, 427–28 (explicitly expressing no opinion on admissibility of a pre-trial statement made while under hypnosis; *United States v. Awkard*, (9th Cir. 1979) 597 F.2d 667 (cases cited therein).

dent of the hypnotic session. *Merrifield v. State*, (1980) Ind., 400 N.E.2d 146, 149; *Williams v. State*, (1976) 265 Ind. 190, 197, 352 N.E.2d 733, 740. The factors that we consider in determining whether or not a potentially tainted identification has a sufficient independent factual basis are reviewed in *Morgan v. State*, (1980) Ind., 400 N.E.2d 111, 113, and are in substantial compliance with the due process requirements of *Manson v. Brathwaite*, (1977) 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154.

The record shows that Miller was an eyewitness to the murder. While the criminal incident transpired within a very brief period of time, during such time, she was only three (3) to four (4) feet from the defendant, and photographs introduced into evidence show that the service station is well lighted at night. The record also shows that Miller provided a description of the assailant to the police after the incident:

"Q. Did Norma Miller give you a description of the subject she saw that night?

"A. Yes sir.

"Q. What was that description?

"A. The description was Negro male, approximately 16 to 20, 5–4, thin build, wearing blue shirt and blue jeans, armed with a 45 caliber revolver. Second subject, negro male, 5–5, thin build, wearing jeans, tee shirt and red bandana type mask around his face.

"Q. Officer, are you reading from the D.H.C. which was dictated that very evening by yourself?

"A. I am reading from the D. H. C. which was given to the uniform men at the scene. They transcribed it onto type later.

"Q. Is that the same description that you received?

"A. The description I have, is a negro male, approximately 15 to 17, thin build, wearing blue tee shirt, blue jeans and carrying black automatic pistol and second subject she never saw.

"Q. Now that description that you are reading from is from your notes of that evening, is that correct?

"A. That's correct."

The following day Miller selected a photograph of the defendant as being the perpetrator. The hypnotic session did not take place until some five days later. At the trial, she testified that she had seen the defendant on several occasions prior to the incident when he had requested change for the soda machine.

This record contains ample evidence of a sufficient independent factual basis for Miller's in-court identification. *Manson v. Brathwaite*, (1977) 432 U.S. 98, 114–15, 97 S.Ct. 2243, 2253–54, 53 L.Ed.2d 140, 154–55; *Morgan v. State*, (1980) Ind., 400 N.E.2d 111, 113–14; *Hart v. State*, (1980) Ind.App., 412 N.E.2d 833, 836; *Eckman v. State*, (1979) Ind.App., 386 N.E.2d 956, 958–59. The possible discrepancies in the descriptions related above and Miller's conduct at the line-up are matters which go to the weight to be given her testimony and not to its admissibility. *Willis v. State*, (1980) Ind. App., 411 N.E.2d 696, 700.

The defendant asserts another error which we think also merits reversal. Over the defendant's objection, the trial court admitted an envelope containing ten color photographs. The photographs constitute the array which was shown to Norma Miller and from which she had chosen the defendant's photograph. The photograph that she chose was a "mug shot" of the defendant taken pursuant to a prior unrelated charge. Each of the ten photographs is a head and shoulders frontal view and has a small white card stapled over the bottom portion, in an attempt to hide a chain and plate, which contains identifying information.

The attempt to conceal the fact that the defendant's photograph was a "mug shot" was meager at best. The exhibit was passed among the jurors, and any juror could easily have glanced under the card, without disturbing the staples, and have thereby learned that the defendant had been arrested for armed robbery in 1975.

When the defendant testified, no mention was made of any prior record.

■ To sustain the admission of a "mug shot" taken in connection with a charge other than the one for which an accused is on trial, the State must show that the photograph in question is not unduly prejudicial and that it has substantial evidential value, independent of other evidence. *Lawrence v. State*, (1980) Ind., 412 N.E.2d 236.

■ The State has failed the first prong of this test. The State argues that "(p)rejudicial material had been deleted from all the photos." The record shows that nothing was deleted; only that the prejudicial parts of the photographs were inadequately covered. We do not understand why the photographs were not enlarged and/or cropped in such a way as would have made even the chain holding the identification plate barely noticeable. *See Lawrence v. State, supra; Gray v. State*, (1978) 268 Ind. 177, 180, 374 N.E.2d 518, 520. *See generally Blue v. State*, (1968) 250 Ind. 249, 235 N.E.2d 471 (cases cited therein).

"We think the State did (not do) everything possible to minimize the likelihood that any prejudicial inferences would be drawn by the jurors."

*Lawrence v. State*, (1980) Ind., 412 N.E.2d 236, 238.

The admission of the photographs was also error, which requires a new trial.

The judgment of the trial court is reversed, and the case is remanded for a new trial.

GIVAN, C. J., and DeBRULER and HUNTER, JJ., concur.

PIVARNIK, J., dissents with opinion.

PIVARNIK, Justice, dissenting.

I must respectfully dissent from the conclusions reached by the majority, that the errors discussed merit reversal of defendant's conviction.

I agree with the majority that the composite drawing produced from the witness while she was in a hypnotic trance was inherently unreliable and should be exclud-ed as having no probative value. The product of the hypnotic trance in this case, however, was a relatively insignificant part of the evidence and in view of the other evidence could not be said to have influenced the jury so strongly that it could not reasonably have been determined that the jury would have found the defendant guilty with or without that particular evidence. The majority finds, and I agree, that the in-court identification of the defendant had a factual basis independent of the hypnotic session.

The jury had before it the testimony of witness Miller that she was three or four feet from the defendant and the victim at the time of the murder and robbery, that the room was well lighted, that she was able to, and did, clearly see the defendant when he committed the crimes. She further testified she recognized him as a person she had seen in the premises several times before when he came to get change for the "pop" machine. The day after the robbery and killing, and five days before the hypnotic session, witness Miller picked defendant's photograph from an array of photographs shown to her. The day after the hypnotic trance, she again picked the defendant's picture from an array of ten photographs shown to her, and there is no showing that this was necessarily influenced by the hypnotic trance she had experienced the day before. She states that she recognized the defendant at the lineup but did not pick him out because of fear that he had seen her. Although this does put her credibility in question on that point, it is an understandable and acceptable attitude and, furthermore, is a question of credibility to be tested and determined by the trier of facts. There was, therefore, this evidence before the jury as to the identification of defendant.

I again agree with the majority in their appraisal of the photographs that were distributed to the jury with the cards stapled over the prejudicial feature as to this defendant. This was unnecessarily sloppy conduct by the prosecuting attorney and it should not have been permitted by the

Court. In view of the direct evidence by witness Miller, however, I would not say that it was error meriting reversal of the conviction. Again, in view of the strong, direct eyewitness testimony of witness Miller, it can surely be said that this jury would have convicted the defendant even without the potentially prejudicial knowledge of a prior arrest and the composite drawing given to the police while under hypnosis.

I agree that in both instances the evidence should have been rejected in the form in which it was offered but in view of all the evidence in the case, I would find that any error committed in their admission was harmless error. I would affirm the judgment of the trial court.