COMMONWEALTH vs. ROBERT K. DODGE
(and three companion cases[1]).

Plymouth. February 6, 1984. — April 11, 1984.

Present: WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Identification. Hypnosis. Evidence,* Hypnotically aided testimony.

Where a victim's identification of two criminal defendants as the perpetrators
of an armed robbery had been obtained only after hypnosis and there
was nothing to show that the victim's identification testimony was unin-
fluenced by hypnosis or that the testimony was based solely on his
prehypnotic memory, the admission of the identification testimony was
error necessitating reversal. [638-639]

INDICTMENTS found and returned in the Superior Court De-
partment on April 16, 1980.

Motions to suppress evidence were heard by *Steadman,* J.,
and the cases were tried before *Wagner,* J.

After review was sought in the Appeals Court, the Supreme
Judicial Court ordered direct appellate review on its own initiative.

*Geline W. Williams* for Robert K. Dodge.

*John P. Corbett,* Assistant District Attorney, for the Com-
monwealth.

*Susan G. Kauffman,* for William H. Hardy, submitted a brief.

WILKINS, J. The defendants were convicted of armed robbery
and armed assault with intent to murder on the basis of iden-
tifications made by Paul K. Foley, a witness who had been
hypnotized before he made a positive identification of either
defendant. We reverse the convictions because Foley's identifi-
cation testimony was not admissible in evidence.

We recite the basic circumstances of the crime and of the
events leading to the defendant's arrests. On the night of Feb-
ruary 14, 1980, Foley was working at his part-time job as a clerk

[1] One against Robert K. Dodge and two against William H. Hardy.

at a beer and wine store in Brockton. About 9:30 P.M., two men entered the store, one of whom was carrying a gun. The man carrying the gun was older than the other man. They took money from the cash register and from a paper bag. The older man shot Foley in the head twice. Foley was able to obtain assistance, however, and was taken to a hospital. He gave descriptions of each man to the police, but was unable to develop composite drawings with which he was satisfied.

On March 10, 1980, at the suggestion of his brother-in-law, a sergeant in the Boston police department, Foley was hypnotized. The police detective conducting the hypnotic session told Foley beforehand that he would get a clearer picture in his mind of what happened on February 14. In the course of the hypnotic session, the detective said Foley should picture himself watching television at home and visualize what happened. After the hypnosis, Foley attempted composite drawings again. He was content with the new composite of the younger man.

On March 27, 1980, seventeen days after the hypnotic session, Foley was at home watching the eleven o'clock news on television when he saw what he believed was the older man who had shot him. He called the Brockton police and later that night identified a picture of the older man in a book containing pictures of white males and said that a picture of another man looked like the younger man who also robbed the store, but that he looked younger in the picture. On March 28, 1980, Foley saw what he believed was the younger man on the noontime news. Foley again called the police. The defendants were arrested and indicted.

The facts just recited are taken largely from the transcript of the hearing on the defendants' motions to suppress Foley's identification testimony. Foley testified at that hearing that he had a "[v]ery vivid memory" of what the robbers looked like and that he "will never forget them."[2] The full pattern of descriptions Foley had given to the police need not be repeated

---

[2] We noted in *Commonwealth* v..*Kater*, 388 Mass. 519, 528 (1983), that experts on hypnotism have concluded that "[s]ubjects show increased confidence in the veracity of recollections reported under hypnosis, regardless of their accuracy."

here. There was uncertainty in the descriptions on several points. Foley testified that the younger man had a mustache and wore glasses. The Brockton detective assigned to this case testified that, shortly after the incident, Foley had said he was not sure whether the younger man had a mustache and that it was possible that he was wearing glasses but he was not sure. Foley's statements concerning the complexion of the older man, mentioning pock marks at some times and not at others, were not consistent. There was no expert testimony as to whether it was merely coincidence or the product of suggestion that, after the "television viewing" technique was used during hypnosis, Foley discovered the defendants on television.[3]

When he denied the defendants' motions to suppress, the motion judge did not have the guidance of our opinion in *Commonwealth* v. *Kater*, 388 Mass. 519 (1983), concerning the admissibility of testimony of witnesses who have been hypnotized. He did have our opinion in *Commonwealth* v. *A Juvenile*, 381 Mass. 727 (1980), which indicated only that the use of hypnotically aided testimony presented problems that needed special attention but did not lay down any firm guidelines. We need not consider the circumstances under which the hypnotic session was conducted because, even if it had been conducted according to adequate procedural safeguards (see *Commonwealth* v. *Kater, supra* at 529-530; *Commonwealth* v. *A Juvenile, supra* at 732-733 n.8), Foley's identification testimony was inadmissible.

There is nothing in this record from which to conclude that Foley's posthypnotic testimony was uninfluenced by hypnosis or that his testimony was based solely on his prehypnotic memory. In the absence of such a showing by the Commonwealth (see *Commonwealth* v. *Kater, supra* at 527; *Commonwealth* v. *A Juvenile, supra* at 734), a witness's posthypnotic memory of prehypnotic events, not recalled before hypnosis, is inadmissible (*Commonwealth* v. *Brouillet*, 389 Mass. 605, 607-608 [1983]), except in limited circumstances not involved

---

[3] We noted in the *Kater* case (*supra* at 527-528), that experts say that "[m]emory is said not to be like a videotape, which accurately records every perception and needs merely to be played back."

here (*Commonwealth* v. *Kater, supra* at 528-529). The admission of Foley's identification testimony, the only evidence placing the defendants at the scene of the crime, was prejudicial error. See *id.* at 530. Contrast *Commonwealth* v. *Watson*, 388 Mass. 536, 542 (1983) (defendant not prejudiced by admission of posthypnotic identification); *Commonwealth* v. *Stetson*, 384 Mass. 545, 552-554 (1981) (same).

The judgments are reversed and the verdicts are set aside. The cases are remanded to the Superior Court for further proceedings.[4]

*So ordered.*

---

[4] At oral argument, the Commonwealth stated that without Foley's identification testimony the charges could not be proved. Thus the further proceedings on remand may simply consist of a dismissal of the indictments.