585 So.2d 439 (1991)
Leroy WEST, Appellant,
v.
STATE of Florida, Appellee.
No. 90-0609.
District Court of Appeal of Florida, Fourth District.
September 4, 1991.
Rehearing Denied October 9, 1991.
*440 Richard L. Jorandby, Public Defender, and Jill Hanekamp, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Carol Cobourn Asbury, Asst. Gen., West Palm Beach, for appellee.
PER CURIAM.
We agree with appellant, Leroy West, that the trial court erred in failing to direct a verdict in his favor because of the insufficiency of the evidence.
Appellant was charged with first degree murder along with two actual assailants. There was evidence presented that the two assailants attempted to rob the occupants of an automobile and in so doing shot and killed one of the occupants. Immediately before the shooting the two got out of a car in which West and Willie Johnson were passengers. Subsequently, West drove the vehicle away and later picked up the two assailants a short distance away from the area of the shooting.
Johnson testified for the prosecution. He was not charged with any crime arising from the incident. According to Johnson, he and West were passengers in the car driven by one of the assailants. He stated that there had been no discussion about any crime while he and appellant were in the vehicle. However, while the car was stopped in traffic at a stop sign, one of the assailants suddenly directed the appellant to take the wheel. Both assailants then exited the vehicle. West and Johnson did not see the assailants again until they returned to the area a brief time later and the assailants got back in the car a short distance away from where they had exited the vehicle. It was only then that Johnson learned of the shooting. Later West, Johnson and the two assailants asked West's sister to hold a bag containing guns for them.[1] When appellant was told the police were looking for him he turned himself in. *441 In essence, Johnson claimed no knowledge of any plan to rob or of any weapons until after the incident was over.
On appeal, West claims that the proof demonstrates that he, like Johnson, had no prior knowledge that the assailants were going to attempt a robbery when they exited the vehicle and did not even know they were armed. The state concedes that it had the burden of proving West's intent to participate in the robbery in order to sustain his conviction. The state claims that West's presence in, and driving of the car, along with his later attempts to hide the guns is enough to sustain the conviction.[2] We cannot agree.
In Staten v. State, 519 So.2d 622, 624 (Fla. 1988), the Florida Supreme Court acknowledged the general rule that "[i]n order to be convicted as a principal for a crime physically committed by another, one must intend that the crime be committed and do some act to assist the other person in actually committing the crime." See also Fla. Stat. § 777.011 (1985); Collins v. State, 438 So.2d 1036 (Fla. 2d DCA 1983). The Staten court noted further that neither knowledge that the offense is being committed nor mere presence at the scene nor a display of questionable behavior after the fact is equivalent to participation with criminal intent. 519 So.2d at 624. See also Collins, 438 So.2d at 1038.[3] In Stark v. State, 316 So.2d 586, 587 (Fla. 4th DCA 1975), cert. denied, 328 So.2d 845 (Fla. 1976), this court held that when the state relies on the aiding and abetting theory, it can prove intent either by showing that the defendant had requisite intent himself or that he knew the principal had that intent. While the evidence of intent may be circumstantial, it must exclude every reasonable inference that the defendant did not intend to participate in criminal activities. W.B. v. State, 554 So.2d 577, 578 (Fla. 3d DCA 1989); Shockey v. State, 338 So.2d 33, 35 (Fla. 3d DCA 1976). In Stuckey v. State, 414 So.2d 1160, 1161 (Fla. 3d DCA 1982), the court addressed factual circumstances similar to those involved herein. The court concluded that the defendant's conduct in driving the actual perpetrator to the scene of the crime in combination with other questionable after-the-fact behavior was insufficient to sustain a conviction even though such evidence might suggest guilt. Such evidence was held to be insufficient as a matter of law to exclude a reasonable hypothesis of Stuckey's innocent presence at the scene that could be drawn from the same evidence.
In this case, the state affirmatively presented evidence, in the form of Johnson's testimony, that actually negated West's knowledge that a crime was about to be committed. The circumstances of the crime itself, as described by Johnson, also suggests a spontaneous decision by the assailants to commit the crime. The state presented no evidence and does not claim, for instance, that the two assailants planned, and knew in advance, that the automobile attacked would arrive in traffic at the precise time and location involved. If anything the evidence suggests that the crime was committed on the spur of the moment without notice to West and Johnson. At least, this is a reasonable inference to be drawn from the evidence presented. Those cases where circumstantial evidence has been held sufficient to support a guilty verdict for one not directly active in the crime involved much stronger evidence of intent. See, e.g., Staten n. 1; *442 Shockey (there was evidence the defendant was involved in arranging the crime).
As the court held in Stuckey, the lack of sufficient evidence, direct or circumstantial, of West's intent to participate in the robbery precludes his conviction for murder in the shooting death that occurred during the robbery.
Accordingly, we reverse and remand with directions that West be discharged.[4]
ANSTEAD and POLEN, JJ., concur.
GARRETT, J., dissents with opinion.
GARRETT, Judge, dissenting.
I respectfully dissent. We should affirm appellant's conviction and sentence. "The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict [an appellate court should] not reverse." State v. Law, 559 So.2d 187, 188 (Fla. 1989). The supreme court further stated:
It is the trial judge's proper task to review the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state. [Citation omitted.] The state is not required to `rebut conclusively every possible variation' [footnote omitted] of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. [Citation omitted.] Once that threshold burden is met, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
Id. at 189.
I believe that the state met its threshold burden and created a jury issue as to whether the evidence was sufficient to exclude every reasonable hypothesis of innocence. The appellant claimed as his theory of the events that he had no prior knowledge that the assailants were armed or about to attempt a robbery. The state, however, introduced substantial, competent evidence that was inconsistent with appellant's theory of the events. Obviously, the jury determined that the evidence excluded every reasonable hypothesis of innocence beyond a reasonable doubt.
Only Willie Johnson, the other rear seat passenger in the white car, testified as to what happened in the white car before the shooting. He stated he did not hear any talk about a robbery or weapons. That testimony supported appellant's theory of the events. Mr. Johnson further testified that after the shooting appellant let him out of the white car a block from where they picked up the assailants. He did not see appellant again that night and about an hour and half later assailants, driving a maroon car, picked only him up.[5]
In addition to the facts included in the majority opinion, the state presented the following evidence inconsistent with appellant's theory of the events:
The testimony of the eyewitnesses established that before the victim's car stopped behind the white car and another car at an intersection, the two assailants got out of the white car and appellant crawled over the back seat to drive. He then drove the white car down the street. Although the assailants did not speak to each other, once out of the car they acted in concert as if their actions had been planned. As they *443 approached the victim's car simultaneously one assailant took a handgun out of his waistband and the other took a handgun out of a paper bag. One assailant went to the driver's side of the victim's car and the other went to the passenger side. Both began shouting at the occupants of the victim's car, telling them to get out of the car and "give it up." After the attempted robbery and the shooting, appellant who had driven around the corner returned and picked up the assailants who had walked a short distance away from the intersection. Apparently, the jury disregarded Mr. Johnson's testimony and concluded that before the shooting appellant heard the two assailants plan the armed robbery and agreed to act as the "getaway" driver.
Johnny Morris, appellant's cousin and next door neighbor, testified that appellant, Mr. Johnson and the two assailants came to his apartment. He overheard the four of them talk about what happened at a robbery and shooting that took place earlier that night. He refused appellant's request that he hold a paper bag that contained three guns. Appellant said he was going to the park with his girlfriend. Mr. Morris saw all four men go to the apartment of appellant's sister. This evidence was inconsistent with Mr. Johnson's testimony that he did not see appellant again that night.
Detective Donadio testified that he drove two eyewitnesses around looking for the assailants and stopped a maroon car. The detective stated that he arrested three of the occupants of the maroon car, the two assailants and Mr. Johnson, but an unidentified fourth person ran away. The jury could have found, and no doubt found, that appellant was the fourth person which would have been inconsistent with Mr. Johnson's testimony. As the fourth occupant, appellant's flight justified an inference by the jury that he was implicated in the attempted robbery and the shooting.
Bernita Jackson, appellant's sister, lived two apartments from Mr. Morris and testified that on the night of the shooting appellant came to her apartment by himself and hid a paper bag.[6] Appellant told her that he had been walking in the park with his wife. The police later found the paper bag which contained the two guns used by the assailants. Ms. Jackson's testimony about who came to her apartment conflicted with Mr. Morris' testimony and apparently, the jury chose to believe Mr. Morris. Appellant's attempts to create a false alibi gave the jury another circumstance to consider and from which to infer guilt.
NOTES
[1] Another witness testified that he was also asked to hold the guns after the crime, and that he then heard West, Johnson and the assailants talk about the crime. Significantly, he could not relate the specifics of the discussion and he gave no testimony as to any prior plan to commit the crime or West's involvement therein.
[2] Although of no consequence to our legal analysis, the appellant has directed our attention to candid pretrial statements by the prosecution on the record indicating the state's difficulty in making a case against the appellant.
[3] In Staten, the court that a getaway driver with prior knowledge of the criminal plan who waits to help the robbers escape falls within the aider and abettor category and is a principal. See also Enmund v. State, 399 So.2d 1362, 1370 (Fla. 1981), rev'd on other grounds, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). Thus, from direct testimony that Staten (1) was present on numerous occasions when the proposed robbery was planned and subsequently participated in group discussions on the way to the scene to execute the plan, (2) waited in the car across the street from the robbery and murder and (3) drove the getaway car, the jury could legitimately infer that she was a participant.
[4] We have considered remanding with instructions that West be convicted of accessory after the fact based on his concession of the proof in that regard. However, under Gould v. State, 577 So.2d 1302 (Fla. 1991), we are precluded from remanding and directing convictions unless the lesser charge is a necessarily lesser included offense. Accessory after the fact is not a lesser-included of murder.
[5] The prosecutor during his final argument remarked, "Well, I think to believe [Mr. Johnson's] account, in its entirety, would be to believe Alice in Wonderland. It just doesn't ring true. But that's for [the jurors] to judge."
[6] It appears that Ms. Jackson had given a prior statement to the police that indicated appellant came to her apartment in the company of the two assailants and Mr. Johnson. However, the trial court sustained a defense objection which prevented any further questioning on that subject.