OPINION OF THE COURT
William J. Burke, J.
The defendant was indicted and charged with having committed the crime of murder in the second degree in violation of subdivison 1 of section 125.25 of the Penal Law; grand larceny in the second degree in violation of section 155.35 of the Penal Law and criminal possession of stolen property in the first degree in violation of section 165.50 of the Penal Law. Relative to the murder count, it is alleged that the defendant, Glenn R. McDowell, intentionally caused the death of one Eddie Joe Hendrix by means of strangulation.
The defendant has made this motion to suppress the statements made by Johnnie T. Williams, an alleged eyewitness to this murder. The general basis for this motion revolves around the fact that this witness was hypnotized and that by virtue of such hypnosis, the defendant contends he will be deprived of his constitutional right to due process of law in that he cannot receive a fair trial. Specifically, the defendant contends that as a result of such hypnosis, the defendant will be deprived of his right to confront and cross-examine the witness.
The defendant asserts in support of this contention that it is *833 uniformly accepted that hypnosis instills in the subject of the hypnosis an absolute subjective conviction of that which is incorporated or reported during hypnosis, regardless of the historical truth of what is stated, and that as a result of this occurrence, the ability to truly cross-examine an individual is prevented.
Furthermore, the defendant contends that by reason of such hypnosis, that evidence in the form of testimony has been destroyed by the prosecution. This allegation is based upon the fact that memories of events developed during hypnosis may come to be accepted by the subject as her recollection of the original events and if such recollection of the events is not accurate or historical, the true facts as they occurred might be lost from the witness’ memory.
Additionally, the defense contends that the use of hyponsis on Johnnie Williams was an identification procedure and the defendant was entitled to notice and the presence of counsel at such session, and that this specific identification procedure was unduly suggestive. The defense also contends that any testimony given by the witness during or subsequent to any hypnosis session must be viewed in the relation to the hypnosis and cannot be separated therefrom, and that this particular hypnosis session was held as an evidence-gathering technique which renders the resulting testimony inadmissible.
In essence, therefore, the defendant contends that the use of hypnosis in the manner utilized in this particular case has resulted in an altered nonhistorical recall of events relating to this murder, and that as a result of such "confabulation” in the process of recalling this event, it is impossible to examine this witness properly because her memory of this event is now the memory as recalled during the hypnotic session and because of its subjective nature, the witness, herself, now accepts that recall of the events as historical and truthful.
The court has had the opportunity to consider the expert testimony presented upon the hearing of this matter and has personally viewed and listened to the video and audio tape recordings of the instant hypnotic session, and is of the opinion that the statements of Johnnie Williams are admissible upon the trial of this matter and are not as a matter of law rendered inadmissible by virtue of the use of hypnosis. While the court is of the opinion that this particular hypnotic session was not conducted in a suggestive manner, great care must be exercised, generally, so that statements made during *834 and after hypnosis are the product of the subject’s own recollection, rather than of recall tainted by suggestions received while under hypnosis.
In determining the admissibility of testimony to be given by one who has been hypnotized, and in order to protect the due process rights of any defendant with regard to such evidence, several safeguards have been delineated by the courts of this State and several others. (See People v Hughes, 99 Misc 2d 863.) The following safeguards have developed with regard to hypnosis, generally, whenever there is any possibility that the subject will be called upon to give testimony. This court will discuss these various safeguards and how they apply in the instant case.
(1) The person conducting the hypnotic session should be a qualified professional, preferably a psychiatrist or psychologist, with training in the use of hypnosis. In the instant case, Mr. Gandino who conducted this particular session, is a psychiatric social worker who has extensively utilized hypnosis in his work for approximately five years and has studied under well-recognized experts in this field.
(2) The qualified professional should be independent, not acting in concert with or responsible to the prosecution, investigator or the defense. While Mr. Gandino is under contract in certain respects with the Onondaga County Sheriffs Department, the instant session in this court’s opinion was truly conducted in a manner consistent with an independent professional, although this court believes that the hypnotist should be independent to avoid even the chance of some unintentional suggestions.
(3) The qualified professional should be given only such information as is essential for him to have, in order to conduct the hypnotic session. Such information should be communicated in the form of a written memorandum. In this instance, while all information was not in writing, Mr. Gandino testified specifically that he was not aware of the defendant’s name, and was basically only aware that a murder had occurred and that another individual was involved.
(4) All contact between the qualified professional and subject should be video taped. Relative to this, the actual hypnotic session was video taped, and recorded by tape recording. Certain preliminary background conferences were not.
(5) No representative of the police, prosecutor or defendant should be present during the hypnotic session. There was no *835 representative of the police, prosecutor or defense present in the room where this hypnotic session occurred. This hypnotic session was viewed through a one-way mirror behind which the video tape and recording equipment were placed.
(6) A lengthy prehypnotic interview should take place between the subject and the hypnotist. The entire medical history of the subject should be carefully explored. The present intake of all drugs should be discussed with particular reference to all drugs and with particular reference to the symptoms of the patient and the reason for the prescriptions. The subject’s judgment and intelligence should be evaluated. In the instant case, an extensive prehypnotic interview was not done, however, a well-recognized mental status examination was performed upon the witness to be hypnotized.
(7) The qualified professional should elicit from the subject, prior to hypnosis, a detailed description of the facts surrounding the subject matter of the hypnotic session, as the subject recalls them. In the instant case, the qualified professional did not, himself, make such a statement. However, the subject witness, herself, had previously given such a statement prior to the hypnotist’s involvement in this case.
(8) The qualified professional should make every effort to avoid adding any new elements to the subject’s memory, and should be extremely careful to avoid giving implicit or explicit cues at any time during pre and posthypnotic contact, as well as during the session itself. While the video tape of the session is poor, it is clear enough when used in conjunction with the tape recording to demonstrate that Mr. Gandino did not make any cues in an attempt to add to, or subtract from, the subject’s actual memory of the event seeking to be recalled. This court has viewed and listened to the tape recordings extensively and there were no suggestions made, or attempted. In fact, the tape of the event, absent the process of putting the subject into the hypnotic state, does not reveal any suggestions on the part of the hypnotist. The subject appears to have been relaxed, and in essence was allowed to recall the events at issue, with very little direct questioning on Mr. Gandino’s part. Moreover, the questions that were asked were not suggestive of the particular answers desired.
(9) Due to the fact that all professionals agree that no examiner can be certain the responses of the subject are free from confabulation, all facts given during the session should be independently corroborated insofar as possible. In the *836 instant case, as stated earlier, the subject had made a prehypnotic statement of the events relating to this murder. While neither party submitted such statement for this court’s consideration, the court can only assume at this point that it is basically consistent with the statement made during and after hypnosis, since the defense had not sought to offer such statement to substantiate its fear that confabulation had actually occurred in this case. In any event, such a statement does exist to test the credibility of this witness upon the trial of this matter.
Therefore, the court is of the opinion that these safeguards have been substantially complied with in this case, relative to the conduct of this hypnotic session. This court is of the opinion that this particular witness’ ability to recall this event, as she actually saw or experienced it, has not been irreversibly altered by the use of hypnosis. Upon the trial of this matter, the defense most certainly will be given its opportunity to completely explore and develop the effect of hypnosis upon the witness’ testimony as that relates to the facts of this case, and how that testimony may not now be accurate, or impaired as a result of such hypnotic session. In this regard, the court will allow the defense to introduce and explore, by way of expert testimony, the nature of hypnosis and its possible or actual effect where relevant, to the determination of the weight to be given the testimony of this witness.
 Relative to the defendant’s argument that this particular session qualified as an indentification procedure, within the meaning of CPL 710.30 and 710.20, this court finds that argument to be without merit in this case. The witness knew the defendant prior to this incident and the fact that she implicates the defendant in these events does not, by virtue of that fact alone, qualify this as an identification procedure. The witness merely gave a statement relative to her recollection of the events as she recalled them. The use of hypnosis does not transpose this session into an identification procedure. Therefore, no notice is quired nor is such a session to be considered such a critical stage of a criminal proceeding so as to require the presence of defense counsel. Additionally, while there are well-recognized dangers that accompany the use of hypnosis, the defense has not demonstrated to this court that the true memory of this particular witness has been destroyed by the use of hypnosis, nor has it been shown that the witness’ statements made during or after such session were confabu *837 lated or nonhistorical. In other words, the defense has demonstrated to this court very explicitly the possible dangers in the use of hypnosis. However, proof that these suspected problems actually occurred in this case is wholly lacking. The People have proven to this court that the instant procedure was not suggestive.
In conclusion, the court believes the use of hypnosis affects credibility, not admissibility, and the testimony of an individual who has undergone hypnosis should not be excluded as a matter of law. However, great care must be exercised to insure that statements made after hypnosis are the product of the subject’s own recollection, rather than of recall tainted by suggestions received while under hypnosis. Additionally, while such testimony should not be excluded as a matter of law, by virtue of the use of hypnosis, the court should be allowed to exclude such testimony in cases where the procedure utilized is impermissibly suggestive and does not substantially conform to safeguards stated earlier in this decision.
The court is also of the opinion that when hypnosis is utilized, by either the People or the defense, upon witnesses to be called upon the trial of the matter, that notice that such hypnosis has been utilized upon a named witness should be given within a reasonable time prior to such trial so either party may properly prepare any appropriate motions relative to such testimony.
This court believes that the use of hypnosis should be used only in rare instances and under the best possible conditions. The expert testimony upon this hearing clearly demonstrates that the opportunity for contamination of the subject’s true memory is a distinct possibility unless extreme caution is observed.
Therefore, the motion to suppress the statments made by Johnnie T. Williams and her potential trial testimony is denied.